**STATE of Alaska, Petitioner,**

v.

**John L. GRAYBILL, Respondent.**

No. S–172.

Supreme Court of Alaska.

Feb. 15, 1985.

---

Charles M. Merriner, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Patrick J. McKay, Marcia Vandercook, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Defendant John L. Graybill was convicted of 20 fish and game violations stemming from three separate episodes of illegal hunting activity during a hunting trip in the Illiamna area near the Koktuli River. Graybill has an extensive history of fish and game violations. He was on probation for a fish and game offense and his hunting license was revoked at the time of the Illiamna hunting trip. The trial judge sentenced him on 14 counts for a total of seven years imprisonment, with five and one-half years suspended.[1] Graybill appealed this

---

1. "Graybill was convicted of 20 counts, but sentenced only on 14. The precise breakdown of the sentences imposed upon Graybill is as follows: (1) Transporting Bear Same Day Airborne in violation of 5 AAC 81.140(c), 180 days with 135 days suspended (Count XXXVIII); (2) Use of Airplane to Drive Bear to Hunter in violation of 5 AAC 81.072(5), 180 days with 170 days suspended (Count XXX); (3) Taking Bear Same Day Airborne in violation of 5 AAC 81.075, 180 days with 170 days suspended (Count XXXI); (4) Hunting Bear Without Hunting License for Hunter in violation of AS 16.05.330(a), 180 days with 170 days suspended (Count XXIX); (5) Use

sentence as excessive. The court of appeals found that the jail term was too severe and that the trial judge was clearly mistaken in imposing this sentence. We reverse the court of appeals and reinstate the original sentence based on the trial judge's discretion under the *Chaney* criteria, and Graybill's status as a repeat offender and a worst offender in his class.

## I.  STATEMENT OF THE CASE

### A.  Factual Background

The court of appeals set out most of the relevant facts for this appeal in *Graybill v. State*, 672 P.2d 138 (Alaska App.1983), which we excerpt here.

Defendants are Anchorage residents who flew to a hunting camp owned by guide Larry Bryant near the Koktuli River. They were caught engaging in illegal hunting activities by an undercover Alaska State Trooper who was posing as an out-of-state hunter. The trooper obtained evidence of three separate episodes of illegal hunting activity. Graybill and Punches each took one caribou during a closed season and sameday airborne. Graybill and Garroute used an airplane and explosives to select and herd a brown bear to other hunters. Graybill and Garroute also took a brown bear in Katmai National Park through use of their supercub aircraft.

Judge Andrews sentenced Graybill to a total of seven years' imprisonment, with five and one-half years suspended; she also fined him $14,000, with $3,000 suspended, and revoked his hunting license for a total of forty-two years. In impos-

ing this sentence, Judge Andrews emphasized Graybill's role as instigator of the present violations as well as his history of fish and game violations. She further considered that Graybill was on probation for a fish and game offense and that his hunting license had been revoked....

Judge Andrews's emphasis upon Graybill's criminal record and, in particular, his history of fish and game violations is amply supported by the record. Graybill violated Michigan fish and game laws in 1962 and 1965. His Alaska offenses include a 1971 conviction for illegal use of an aircraft; a 1972 conviction for illegal possession of a brown bear hide and, subsequently, a probation violation for that offense; an additional probation violation in 1973; and a conviction for malicious destruction of property in 1977. Graybill served 90 days, on week-ends, for the 1972 probation violation and twenty-four days for the 1973 probation violation. In September, 1980, Graybill was convicted for taking game sameday airborne. As a result of this conviction he received 180 days with 170 days suspended and his hunting and trapping license was revoked for twenty-four months. Graybill was on probation for the 1980 offense when he committed the present offenses. Additionally, charges against Graybill for hunting wolves from an airplane near Galena were pending in Fairbanks during his trial in this case. Despite Graybill's lengthy record, none of his convictions resulted in imposition of significant jail time.

of Airplane to Herd Brown Bear in violation of 5 AAC 81.072(5), 180 days with 150 days suspended (Count XXIII); (6) Transport of Caribou Taken Sameday Airborne in violation of 5 AAC 81.075(a), 180 days with 160 days suspended (Count VII); (7) Hunting for Bear Without Hunting License in violation of AS 16.05.330(a), 180 days with 160 days suspended (Count XXII); (8) Hunting Without a Hunting License in violation of AS 16.05.330(a), 180 days with 135 days suspended (Count XXXIV); (9) Use of Airplane to Drive Brown Bear for Hunter in violation of 5 AAC 81.072(5), 180 days with 135 days suspended (Count XXXV); (10) Taking a Bear Sameday Airborne in violation of 5 AAC

81.075, 180 days with 135 days suspended (Count XXXVI); (11) Taking Caribou Sameday Airborne in violation of 5 AAC 81.075(a)(6), 180 days with 80 days suspended (Count III); (12) Use of Explosives to Drive Bear to Hunter in violation of 5 AAC 81.072(7), 180 days with 80 days suspended (Count XXV); (13) Taking Caribou During Closed Season in violation of 5 AAC 81.320(5), 180 days with 150 days suspended (Count II); (14) Hunting Without a License in violation of AS 16.05.330(a), 180 days with 150 days suspended (Count I)."

*Graybill v. State,* 672 P.2d 138, 140 (Alaska App. 1983).

Judge Andrews concluded that Graybill's prior record and his probationary status demonstrated a need to emphasize the sentencing factor of isolation in fashioning Graybill's sentence. She viewed the sentence she imposed as one designed to deter Graybill and others and to reaffirm societal norms. She considered Graybill's case to be "the worst possible scenario of what really could be one of the ... great experiences of being an Alaskan." Implicit in Judge Andrews's statement is the conclusion that Graybill was a worst offender and that imposition of a maximum sentence was therefore justified. *See, e.g., State v. Wortham,* 537 P.2d 1117 (Alaska 1975); *Tookak v. State,* 648 P.2d 1018 (Alaska App.1982).

*Id.* at 139, 140 (footnote omitted).

One other factor should be mentioned briefly. After Judge Andrews sentenced Graybill in this case, she terminated his probation for the 1980 game offense and revoked the suspension of 170 days of his sentence. However, she made that 170-day sentence concurrent with his sentence in this case.

### B. Procedural Background

The court of appeals held that Graybill's total jail term of seven years with five and one-half years suspended was too severe and that Judge Andrews was clearly mistaken in imposing this sentence. Therefore, the court remanded the case for imposition of an amended sentence. As a maximum sentence, the court of appeals stated that Graybill should receive three years with two years suspended. *Graybill v. State,* 672 P.2d at 143. We granted the state's petition for hearing to review the reversal of Graybill's sentence.

## II. DISCUSSION

### A. Court of Appeals' Rationale

The court of appeals stated that Graybill deserved classification as a worst offender subject to imposition of a maximum misdemeanor sentence. *Graybill v. State,* 672 P.2d at 140. Since the crimes in this case involved three separate and distinct criminal episodes, the court agreed that imposition of consecutive sentences was also appropriate. *Id.* at 141. However, the court reversed the trial judge's sentencing as too severe for Graybill's offenses.

The court principally relied on three factors in its reversal. First, the court was concerned about the disparity of Graybill's sentencing compared with sentences for other fish and game violations. Considering actual jail time, suspended jail time and the amount of probation, Graybill received a total sentence exceeding that which could be imposed on a Class C felony offender, a sentence which "does not adequately reflect the nature and scope of the harm that occurred as a result of Graybill's misconduct." *Id.* at 142. The court believed that his sentence contravened the "just deserts" theory of punishment contained in AS 12.-55.005(1).

Second, Graybill's aggregate sentence exceeded the suggested maximum sentence of five years in the A.B.A. Standards on Sentencing Alternatives and Procedures. The A.B.A. standard reserves longer sentences for particularly serious offenses committed by particularly dangerous offenders. The court of appeals stated that Graybill's offenses were not done for commercial gain and did not threaten human life. Moreover, the court believed that it would be unrealistic to label Graybill as a particularly dangerous offender. *Id.* at 143.

Third, the court disagreed with Judge Andrews' emphasis on isolation of Graybill under the *Chaney* factors. The sentence of seven years imprisonment with five and one-half years suspended was too drastic an increase from Graybill's previous sentences. A lesser sentence would suffice to deter him. *Id.* at 143.

As a result, the court found Judge Andrews clearly mistaken. On remand, the court believed that the judge should impose consecutive sentences totaling not more than three years in length with two years suspended.

B.  Did the Court of Appeals Err in its Determination that Judge Andrews was Clearly Mistaken in Imposing a Seven-Year Sentence with Five and One-Half Years Suspended for Graybill's Offense?

(1) The trial judge has discretion in determining the relative weight given to the *Chaney* criteria.

■■■ In *State v. Chaney,* 477 P.2d 441 (Alaska 1970), we established the standard for sentence review. A trial judge must consider five sentencing objectives, including (1) rehabilitation of the offender; (2) isolation of the offender from society; (3) deterrence of the offender after release; (4) deterrence of members of society with tendencies toward similar criminal behavior; and (5) reaffirmation of societal norms for the purpose of maintaining respect for the norms. *Id.* at 444. The trial judge has the responsibility to determine the priority and relationship of these objectives in any particular case. *Nukapigak v. State,* 663 P.2d 943, 945 (Alaska 1983); *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973). To determine if a sentence is excessive, the appellate court exercises independent review of the record. The court may modify the sentence "only in those instances where the reviewing court is convinced that the sentencing court was clearly mistaken in imposing a particular sentence." *McLain v. State,* 519 P.2d 811, 813 (Alaska 1974).

In the present case, Judge Andrews considered the *Chaney* criteria in sentencing Graybill. She was skeptical about Graybill's potential for rehabilitation based on his dishonest testimony at trial and in the sentencing hearing, but recommended psychological counseling as part of his sentence. She stressed isolation of Graybill as a very significant consideration in this case.

■■■ The court of appeals disagreed with Judge Andrews' emphasis on isolation of Graybill. The court felt that she was overly pessimistic about the deterrent effect of a jail sentence on Graybill, because he had never served any significant time in jail. However, the probation officer in his pre-sentence report noted that Graybill has

"run the gamut of judicial tools used for rehabilitation. He has served time, experienced probation and probation violations, paid fines and restitution, forfeited an airplane, lost his hunting and trapping license." Knowing Graybill's history, Judge Andrews may have concluded that isolation was a necessary factor to stress. It was properly her responsibility as trial judge to determine the priority and relationship of the *Chaney* criteria. *Nukapigak,* 663 P.2d at 945.

(2) The court of appeals' reliance on the A.B.A. sentencing standard

The A.B.A. Standards on Sentencing Alternatives and Procedures, standard 18–2.1 (1980), states: "most offenses, the maximum prison term authorized ought not to exceed ten years and normally should not exceed five years." Longer sentences are reserved for particularly serious offenses committed by particularly dangerous offenders. The court of appeals recognized that the A.B.A. standard refers to sentences of more than five years of *unsuspended* incarceration, but considered it as a useful benchmark to evaluate Graybill's total sentence. *Graybill* at 142, n. 4.

In *Pascoe v. State,* 628 P.2d 547 (Alaska 1980), Pascoe contended that a sentence of six years with three years suspended exceeded the A.B.A. standard and was erroneous. We affirmed the sentence, stating: "While we agree that a sentence *normally* should not exceed five years, our review of this case leads us to the conclusion that in imposing sentence, the superior court was not clearly mistaken." *Id.* at 550 (emphasis in original). Therefore, we will evaluate the individual case to determine if the A.B.A. standard is appropriate.

Similarly, in *Sundberg v. State,* 652 P.2d 113 (Alaska App.1982), the defendant contended that an eight-year sentence for grand larceny was excessive. Concerning the A.B.A. standard, the court of appeals stated:

[T]he five year rule is a guideline, not a mandatory limit. . . . Also, in our jurisprudence and under the new A.B.A. stan-

dards, dangerousness is equated with repetitive criminality, not necessarily with violence.... Thus, a repeat offender is, for sentencing purposes, a dangerous offender.

*Id.* at 116. Since Sundberg had prior felony convictions, he was a dangerous offender and qualified for a sentence exceeding five years.

Under *Sundberg* and the A.B.A. standard, Graybill qualifies as a dangerous offender for sentencing purposes. Graybill has repeatedly violated state fish and game laws. He was on probation for a 1980 game violation when he committed the violations in this case. Charges against Graybill for hunting wolves from an airplane near Galena were pending during his trial in this case. *Graybill* at 140.

Alaska's Code of Criminal Procedure emphasizes the importance of prior convictions in sentencing. "In imposing sentence, the court shall consider ... (2) the prior criminal history of the defendant and the likelihood of rehabilitation...." AS 12.-55.005(2). Determinate sentencing for felonies also takes recidivism into account. AS 12.55.125. In *Maal v. State*, 670 P.2d 708 (Alaska App.1983), the court rejected defendant's argument that the trial judge should have disregarded prior convictions because they occurred more than 14 years ago. The court held:

> [E]ven if a prior felony conviction is too remote in time to be considered in determining whether a defendant is subject to the presumptive sentencing statutes, the conviction can still be considered for sentencing purposes. Substantial weight can be given to a prior conviction if the present circumstances indicate that the prior conviction is still relevant.

*Id.* at 711. In *Coleman v. State*, 621 P.2d 869, 884 n. 24 (Alaska 1980), *cert. denied*, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981), we observed that "recidivism demonstrated by the proximity in time of a defendant's crimes to each other or to his release from prior incarceration, is a significant factor in assessing a sentence."

Therefore, a sentencing judge may properly take a defendant's recidivism into account in fashioning a sentence. When Judge Andrews considered Graybill's convictions for fish and game violations dating back to 1962, she concluded that his conduct warranted a severe sentence. As she stated: "I think that at some point you've got to learn that the State of Alaska is not your private hunting reserve, Mr. Graybill...." Based on Graybill's record as a repeat offender, we conclude that the court of appeals mistakenly relied on the A.B.A. standard to reduce Graybill's sentence.

(3) Evaluation of the suspended portion of Graybill's sentence

Graybill was sentenced to serve one and one-half years for his three separate hunting violations. Judge Andrews suspended five and one-half years of Graybill's total sentence and placed him on informal probation for five years. The court of appeals noted that the aggregate of Graybill's misdemeanor sentences, including suspended and unsuspended jail time, exceeded five years. The court was unable to find that an aggregate sentence falling within the Class B felony range was appropriate under the circumstances of this case. *Graybill*, 672 P.2d at 141.

In *Jimmy v. State of Alaska*, 689 P.2d 504 (Alaska App.1984), the judge sentenced Jimmy to serve 50 years in prison with 25 years suspended for second degree murder. Jimmy argued that his sentence was more than twice as long as the typical sentence for second degree murder established by *Page v. State*, 657 P.2d 850 (Alaska App. 1983). The court of appeals rejected this claim, stating that "our primary emphasis must be placed on the unsuspended portion of Jimmy's sentence." *Jimmy*, 689 P.2d at 505. The court also held that Jimmy's sentence was not excessive after considering the sentence in its entirety. "[I]t would be unrealistic to consider suspended time as the equivalent of time to be served in prison." *Id.* at 505. *Cf. Friedberg v. State*, 663 P.2d 558, 559 (Alaska App.1983) (focus primarily on amount of unsuspended jail time when determining whether consecutive sentences exceed the presumptive sentence for a second offender).

We also discussed sentence review in *Karr v. State,* 686 P.2d 1192 (Alaska 1984). Karr contended that a sentence of ten years with five years suspended was excessive for embezzlement. We stated:

> Any portion of the sentence that is suspended is to be weighed in determining whether a sentence is excessive; however, suspended time is a less important consideration than non-suspended time.

*Id.* at 1194. Based on the *Chaney* criteria of community condemnation and deterrence, we affirmed the sentence in *Karr.*

In *Leuch v. State,* 633 P.2d 1006 (Alaska 1981), Leuch pled guilty to two counts of grand larceny and received concurrent sentences of eight years with four suspended. We stated that a court reviewing the sentence should also weigh the suspended portion.

> It would, of course, be unrealistic to consider the suspended time to be as harsh a sanction as time to be served in prison. However, it would be incorrect to consider suspended time as a nugatory or insignificant sanction.

*Id.* at 1010. We reversed Leuch's sentence as excessive because he was a first-time felony offender and his sentence should not have exceeded the five years recommended by the A.B.A. standard. In addition, the new criminal code established a maximum sentence of five years for Leuch's offense.

In this case, Judge Andrews sentenced Graybill to serve one and one-half years in prison. Under the *Jimmy* analysis, we place our primary emphasis on the unsuspended portion of the sentence. Graybill readily qualifies as a worst offender in his class. As a worst offender, Graybill could properly be given a maximum sentence. *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975). Each of Graybill's three separate criminal episodes constituted a misdemeanor with a maximum sentence of 180 days imprisonment. In this case, the sentencing record reveals a striking pattern of recidivism and compels us to conclude that imposing consecutive sentences was not error. *Neal v. State,* 628 P.2d 19, 21 (Alaska 1981). Graybill's sentence of 540 days incarceration should have been upheld on appeal.

In holding that Graybill's aggregate sentence was too severe, the court of appeals focused primarily on the "three separate criminal episodes in which only crimes of a misdemeanor nature occurred." *Graybill,* 672 P.2d at 141. Unlike the defendant in *Leuch* who was a first-time offender, however, Graybill has an extensive record of flagrant fish and game violations. As the court of appeals stated, Graybill has demonstrated an "almost unprecedented" disregard for state fish and game regulations. *Id.* We note that a finding of a defendant's dangerousness may be based on a history of repeated criminality. *Viveros v. State,* 633 P.2d 289 (Alaska App.1981). In light of his extensive criminal record, we find that Graybill could properly be characterized as a dangerous offender. Therefore, the court of appeals should have given more weight to Graybill's criminal history in reviewing his sentence. AS 12.55.005(2).

In Graybill's case, the long suspended sentence is warranted by his status as a repeat offender and a worst offender in his class. The suspended sentence of five and one-half years will serve as an effective deterrent of Graybill after release and also reaffirm societal norms. *State v. Chaney,* 477 P.2d at 444. In addition, Judge Andrews specifically emphasized the *Chaney* factor of isolation when sentencing Graybill based on his prior record. *See Brown v. State,* 693 P.2d 324 at 331 at 14, (Alaska App.1984, Singleton, J. concurring). Since her assessment was not clearly mistaken, the court of appeals erred when it reversed Judge Andrews. Graybill's original sentence of seven years with five and one-half suspended should be reinstated.

The decision of the Court of Appeals is REVERSED and the sentence imposed by the District Court is reinstated and AFFIRMED.