Carl Isaac JIMMY, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–51.

Court of Appeals of Alaska.

Oct. 12, 1984.

Galen Paine, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

Laurie H. Otto, Dist. Atty., Bethel, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Carl Isaac Jimmy, Jr., was originally charged with murder in the first degree, AS 11.41.100(a)(1). He subsequently entered a *nolo contendere* plea to the lesser offense of murder in the second degree, AS 11.41.110. Superior Court Judge Christopher R. Cooke sentenced Jimmy to serve fifty years in prison, with twenty-five years suspended. Jimmy appeals, contending that the sentence is excessive. We affirm.

Jimmy relies primarily on *Page v. State,* 657 P.2d 850, 855 (Alaska App.1983), where we held:

> A review of the sentences for second-degree murder considered by the supreme court and this court since 1970 indicate[s] that the typical sentence is twenty to twenty-five years. It is possible that the reported cases overstate sentences, since someone receiving less than twenty years may not be strongly motivated to appeal. Twenty years is therefore a proper benchmark to measure sentences for this crime. Any sentence substantially exceeding that amount would appear at least provisionally suspect. It would appear appropriate, therefore, ... that one convicted of that offense should receive a sentence of from twenty to thirty years. Naturally, mitigating circumstances could reduce the sentence down to the five-year minimum and aggravating circumstances could enhance it up to the ninety-nine year maximum.

Jimmy insists that the total sentence of fifty years that he received is more than twice as long as the benchmark sentence for second-degree murder established in *Page.* We disagree.

■ Although Jimmy was sentenced to a total of fifty years' imprisonment, twenty-five years of that sentence were suspended. For the purpose of determining whether Jimmy's sentence exceeds the twenty to thirty-year range that we established as an appropriate benchmark in *Page,* our primary emphasis must be placed on the unsuspended portion of Jimmy's sentence. *See, e.g., Friedberg v. State,* 663 P.2d 558, 559 (Alaska App.1983) (in determining whether consecutive sentences exceed the presumptive sentence for a second offender, it is appropriate to focus primarily on the amount of unsuspended jail time); *Tazruk v. State,* 655 P.2d 788 (Alaska App. 1982) (in determining whether a nonpresumptive first offense sentence exceeds the presumptive sentence for a second offender, our primary focus should be on the unsuspended portion of the sentence).

■ The unsuspended portion of Jimmy's sentence was twenty-five years, well within the twenty to thirty-year range established by *Page.* We conclude that, when evaluated in the light of the *Page* benchmark, Jimmy's sentence does not fall into the "provisionally suspect" category.

■ We must separately consider whether Jimmy's sentence is excessive, even though it does not violate the *Page* benchmark. In determining whether the sentence is excessive, we must consider the sentence in its entirety, including all suspended time. However, it would be unrealistic to consider suspended time as the equivalent of time to be served in prison. *Karr v. State,* 686 P.2d 1192, 1194 (Alaska, 1984); *Leuch v. State,* 633 P.2d 1006, 1010 (Alaska 1981); *Friedberg v. State,* 663 P.2d at 559.

In the present case, the circumstances surrounding the offense were particularly serious. While in Bethel at the home of Dennis Gunder, his brother-in-law, Jimmy shot Gunder's brother in the head four times at close range. Jimmy's sole purpose appears to have been to steal money from his victim. Jimmy used a revolver that he had recently stolen from another home.

Although Jimmy claimed that he was severely intoxicated at the time and had blacked out, Judge Cooke, after hearing expert testimony on the issue, expressly

rejected Jimmy's claim that he suffered from alcohol-induced amnesia when he committed the murder. In imposing sentence Judge Cooke stated:

> The phrase "cold-blooded murder," I think, applies to this event. The defendant shot the victim four times in the head; approached him from behind; took him by surprise; there wasn't any provocation; there wasn't any argument. It's just impossible to discover what reason there could have been to explain it. It was cruel, senseless, cowardly, unprovoked, totally unnecessary.

We believe Judge Cooke's characterization is amply supported by the record. Jimmy's conduct must be considered to be among the most serious within the definition of murder in the second degree and verges on the more serious offense of murder in the first degree. Given these circumstances, imposition of a relatively severe sentence was not inappropriate, despite Jimmy's youth, his lack of a prior criminal record, and his favorable work history and family background. *See Huckaby v. State*, 632 P.2d 975, 976 n. 2 (Alaska App.1981). *See also Notaro v. State*, 608 P.2d 769, 770 n. 1 (Alaska 1980) (nature of the crime itself is sufficient to make defendant a worst offender and to justify a fifteen-year sentence for manslaughter, despite defendant's relatively favorable background and lack of a prior criminal record).

■ In imposing Jimmy's sentence, Judge Cooke carefully considered the applicable *Chaney* criteria. *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). The total sentence received by Jimmy, fifty years with twenty-five years suspended, is considerably below the maximum sentence of ninety-nine years provided for by law. AS 12.55.125(b). Having independently reviewed the sentencing record, we conclude that this sentence was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.